*103 OPINION OF THE COURT
Joseph D. Caputo, J.
This is a proceeding instituted by the Commissioner of Social Services, pursuant to section 1055 of the Family Court Act, for a 12-month extension of placement of the child, Jacqueline E., to effect a trial discharge to the natural mother. The petition is dated November 21, 1977. In addition, the Law Guardian for the child filed an order to show cause with the Bronx Family Court on November 29, 1977, praying for an order pursuant to subdivision (b) of section 1055 of the Family Court Act, extending placement with the commissioner for a 12-month period beginning December 6, 1977; and in addition, the Law Guardian seeks an order pursuant to subdivision (d) of section 1055 of the Family Court Act directing the commissioner and/or the Cardinal Hayes Home, to institute a termination proceeding and free Jacqueline for adoption.
In a hearing before Honorable Joseph A. Doran on December 5, 1977, said order to show cause was, by indorsement, "treated as an answer to petition for extension of placement by way of additional alternative relief.”
Jacqueline ("Jackie”) was born in 1968 and following a finding of neglect in July, 1969, against the natural mother, she was placed with the Commissioner of Social Services on September 9, 1969, for an initial period of 18 months. Placement has been extended each year through December, 1977. In the interim, she was placed under foster care by the Catholic Home Bureau. Later, she was put in the care of the Cardinal Hayes Home, who, on August 15, 1975, placed her with John and Hazel F., Jacqueline’s present foster parents. The F.’s have expressed their strong desire to adopt Jackie.
However, the natural mother has co-operated with the commissioner, the Cardinal Hayes Home, and the Ohio welfare agency in Cuyahoga County, in reuniting with her daughter.
In the past year, the agencies involved have arranged visits between the mother and daughter, in New York and Ohio. The reports of these visits have been encouraging, and as a result it is now the position of all of the aforesaid agencies that a trial discharge to Martha Q. and her husband Jose FI., be effectuated with a goal of returning the child to them in Ohio.
This proceeding has been long, and the parties involved *104 have fervently argued their positions in a manner worthy of praise.
One of the most difficult responsibilities given to a Family Court Judge is to make a determination regarding the placement of a child. He must consider the effect of his determination not only upon the child herself, but as in a case such as this, upon the lives of two families, both of whom profess their love for the child.
Guided by statutory authority and the testimony in the proceeding, this court believes that the natural mother should be given an opportunity to care for Jackie and see if permanent return to her can be accomplished.
The Family Court, when it was created, was designed to be a "special agency for the care and protection of the young and the preservation of the family.” (1962 Report of Joint Legis Committee on Court Reorganization, No. 2 Family Ct Act, Committee Comments p 2).
Section 384-b (subd 1, par [a]) of the Social Services Law states in part that: "(ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered; (iii) the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home”. (Emphasis added.)
Case law bears this out. "[FJoster parents must make a serious attempt to encourage, not discourage, the improvement of relations between the children under their charge and a mother who is trying to re-establish the bonds of family love and concern * * * [With regard to] 'contest between a parent and nonparent for the custody of an infant, the parent enjoys the paramount right to raise the child, and will not be deprived of that right, absent a showing of unfitness or abandonment’ ”. (State ex rel. Wallace v Lhotan, 51 AD2d 252, 259, app dsmd 39 NY2d 743.)
After hearing the testimony and recommendations of the case supervisor, Ann Cabalan, and caseworker, Arlene Hurley from the Bureau of Child Welfare, Neil Teicher, supervisor of Cardinal Hayes (Foster Home Care), and the testimony of Martha Q. and her husband Jose FI., this court was favorably impressed with the interest and efforts of Martha Q., not only *105 in working toward the return of her child, but also in her own rehabilitation in returning as a productive member of society. The facts indicated that Miss Q. has faithfully adhered to a drug rehabilitation program and is now on methadone maintenance. She is now married to a man with whom she has lived for several years, with no evidence of instability. Mr. FI. despite a shaky start, has had an extremely good employment record. Together they share a large two-bedroom home in Ohio, which according to the testimony of the social workers, is suitable should Jackie be returned there. Both Martha and Jose FI. have strong family roots and social ties in Ohio. It is primarily for that reason that Miss Q. left New York City in order to rehabilitate herself.
The court believes the testimony that much of the seeming lack of disinterest earlier exhibited by Miss Q. was the result of misunderstanding on her part as to the care of her child while she was incarcerated; and later her efforts to reopen communication with her child were deliberately sabotaged by Miss Q.’s stepmother, who intercepted her mail and phone calls.
The Law Guardian, in asking for Jackie to be freed for adoption, argues that the child regards the F’s as her psychological parents; and that in a psychiatric evaluation, Jackie was adamant in her desire to stay with her foster parents. Indeed, this court has seen the child in camera, in the presence of counsel for all parties, and at that time Jackie expressed her desire to stay with her foster parents. She said that while she had a nice time visiting her mother in Ohio, she didn’t want to live there.
Jackie is nine years and 10 months old. While the court certainly weighs her wishes, it is not bound by it: "While a child’s view should be considered to ascertain his attitude and to lead to relevant facts, it should not be determinative.” (Dintruff v McGreevy, 34 NY2d 887, 888.)
This position by the court was borne out by the testimony of the psychiatrist who interviewed Jackie at the request of the Law Guardian. He indicated that in his opinion, a nine-year-old girl should not be given the absolute power to choose where she lives. It is important to note here that Jackie historically has had difficulty in readjustment. Indeed, she had a difficult time in preparing herself for the move to the F.’s. She is once again faced with another move.
The F.’s have indisputably given Jackie a proper and loving *106 home life, but from the time that Jackie was placed with them, they were aware of the efforts being made to reunite her with her natural mother. The possibility of their losing Jackie has been known to them from the beginning. "To the ordinary fears in placing a child in foster care should not be added the concern that the better the foster care custodians the greater the risk that they will assert, out of love and affection grown too deep, an inchoate right to adopt. The temporary parent substitute must keep his proper distance at all costs to himself.” (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 205.)
Regardless of the nomenclature given them on various reports, the F.’s were and have been "foster parents”, not "pre-adoptive.”
The Law Guardian’s request for the court to order a proceeding to terminate parental rights is denied. The court does not have legal cause to find that, presently, grounds exist for such directive. The natural mother and her husband are "examples of rehabilitation” and the mother has been substantially planning for her child, as required by statute, in section 384-b of the Social Services Law.
"[I]n a contest between parents and nonparents, the parent has a superior right to custody absent a showing of unfitness or abandonment * * * the burden of which is upon the party seeking to divest the natural parent of custody.” (Matter of T., 28 NY2d 391, 394.) The Law Guardian has not met that burden, nor has the foster parent.
Upon the proceedings herein and pursuant to subdivision (c) of section 1055 of the Family Court Act, placement of the child, Jacqueline E., with the Department of Social Services, shall be extended through December 6, 1978. The court agrees with the position taken by the agency, Cardinal Hayes Home, the Commissioner of Social Services, and the attorney for the respondent, which favors a trial discharge to the natural parent. A trial discharge remains a casework function that remains part of the rehabilitative effort.
The attorney for the agency, Cardinal Hayes, requests that placement be extended and that the agency, Cardinal Hayes, be charged with responsibility for supervision and that the agency in fact make visits to Cleveland and that reports be made monthly from Cleveland to the agency. Accordingly, the court directs that the Department of Social Services and Cardinal Hayes Home be authorized to effectuate a trial *107 discharge of the child to the natural mother, under the close supervision of the Cuyahoga County Welfare Department, Cleveland, Ohio, with reports to be made monthly to the Department of Social Services, as to existing conditions, the well-being of the child, and the status of the trial discharge; likewise said reports to be made to Cardinal Hayes. Further, for the reasons stated, the- application by the Law Guardian for the court to direct a proceeding to terminate the rights of the natural mother under subdivision (d) of section 1055 of the Family Court Act is denied. As indicated by the attorney for Cardinal Hayes Home, if in the future, based upon the agency’s casework, its position were to change, it would be that time to seek permission to bring a termination proceeding.